# Lewis v. Lewis.

(Decided June 20, 1924.)

## Appeal from Harlan Circuit Court.

1. Divorce—No Fixed Rule for Determining Amount of Alimony.—There is no fixed rule for determining amount of alimony or percentage of husband's estate to which wife is entitled upon securing a divorce.

2. Divorce—Amount of Alimony Discretionary with Chancellor—Finding Not Disturbed Unless Manifestly Erroneous.—Amount of alimony to be awarded wife is a matter left to sound discretion of chancellor, and his decision will not be disturbed unless manifestly erroneous.

3. Divorce—Matters Considered in Determining Amount of Alimony.—In fixing alimony, court should consider husband's estate, his income and earning capacity, his age, health, and ability to labor, age, health, and station of wife, particular cause of divorce, relative responsibility therefor, whether wife has helped in accumulating property and all other relevant circumstances.

4. Divorce—Divorce Properly Granted for Six Months' Cruelty Indicating Settled Aversion.—Wife held properly granted divorce for six months' cruelty of character indicating settled aversion.

5. Divorce—Divorce Cannot be Disturbed Except as to Alimony.—Court of Appeals is not authorized to disturb divorce granted, except as to alimony.

6. Divorce—$9,000.00 Lump Sum Awarded as Alimony Out of Estate of $46,000.00—Wife divorced for cruelty showing settled aversion held entitled to $9,000.00 alimony in lump sum out of husband's estate of $46,000.00, not including maintenance for infant son.

7. Divorce—$1,500.00 Attorney's Fee Held Excessive.—An allowance of $1,500.00 attorney fee in divorce case was excessive and should be reduced to $900.00, where record was not voluminous and 45 short depositions were taken, and facts were not complicated.

B. B. GOLDEN and JOHN B. CARTER for appellant.

J. S. FORESTER and F. F. ACREE for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Reversing.

Appellant, Bessie Lewis, sued appellee, John D. Lewis, in the Harlan circuit court seeking an absolute divorce, permanent alimony, the custody and maintenance of their infant son, and the costs of the action, including attorneys' fees. By the judgment of the court she was awarded a divorce, the custody of the child and $9,000.00 alimony and maintenance for herself and child, payable

at the rate of $125.00 per month over a period of six years, and her attorneys were allowed a fee of $1,500.00. From that judgment appellant prosecutes this appeal on the ground that she should have been awarded alimony in a larger amount and in a lump sum; appellee prosecutes a cross-appeal wherein he complains of the $1,-500.00 attorney fee allowed appellant's counsel.

We have never adopted a fixed rule for determining the amount of alimony or the percentage of her husband's estate to which a wife is entitled upon securing a divorce. That is a matter which is left to the sound discretion of the chancellor to be decided in the light of the facts of each particular case, and the decision of the chancellor thereon will not be disturbed by this court unless it is manifestly erroneous. However, we have indicated in a number of cases the circumstances and conditions which should be considered in arriving at a decision and upon which the award should be based. In the case of Yager v. Yager, 197 Ky. 358, in discussing this subject, this court said:

"We have frequently held that in fixing the amount of alimony the court should consider the amount of the husband's estate, his income and earning capacity, his age, health and ability to labor, the age, health and station of the wife, the particular cause of the divorce, the relative responsibility of the parties therefor, whether or not the wife has helped in accumulating the husband's property, and all other relevant circumstances."

With these general principles in mind we have carefully reviewed the record before us. Numerous grounds were alleged by the appellant as a cause for divorce, but the record does not disclose upon what ground it was granted. From our examination we are convinced that the only one satisfactorily established by the evidence is that of six months' cruelty on the part of appellee and of such a character as to indicate a settled aversion to appellant and to destroy permanently her peace and happiness. At the time of their marriage in January, 1914, appellant was sixteen years of age, the daughter of an impecunious coal miner, living in or near the little mining town of Wilhoit in Harlan county, without means or much education and though of reasonably good health she was of a nervous and irritable tempera-

ment.   Appellee was then thirty-five years of age and a thrifty, prosperous merchant of Wilhoit, inclined to be niggardly and of a silent, sulky and unaffectionate disposition.   Apparently they lived in comparative peace and harmony, if not in happiness, until about the time their son was born in October, 1914, but from that time on they seem to have drifted steadily apart until their final separation in February, 1921, a month before the institution of this action.   Appellant's health at times was poor, though not to the extent that she imagined or claimed, and her physician testifies that a serious though not dangerous operation would cure her; appellee was wholly unsympathetic and evidently believed—not entirely without reason—that appellant exaggerated her condition for the purpose of avoiding her household duties.   It is shown that for long intervals appellee would refuse to speak to appellant; that he frequently left her at home alone for days at a time when she was sick, in need of attention and without help; that he never called to see her or inquire as to her condition when she was dangerously ill and confined for weeks in a nearby hospital; that he habitually neglected, cursed and abused her and refused to pay her the slightest attention except to fuss and quarrel at her and in no way did he display towards her the least love or affection.   While permitting her to purchase on credit from other stores or to take from his store whatever she might need, he seems to have been utterly unwilling to make her any sort of allowance or entrust her with any money whatever.   This was necessarily a constant source of friction, and appellant persistently complained of it both at home and abroad.   Appellee spent all of his time at his store immersed in his business from the time he arose until nine or ten o'clock at night, and only returned to his home, even when in the best of humor, to sleep and eat his meals.   That money was his main concern can scarcely be doubted.   On the other hand, it is apparent that appellant's unguarded temper, her exaggerated idea of the wealth of her husband, lack of tact, and her constant complaints in public as well as private, were, to some extent at least, partly responsible for her unhappy lot.

It would serve no useful purpose to further discuss in detail the particular causes of the divorce or of the relative responsibility of the parties therefor.   Neither is wholly without fault, but the weight of the evidence is with the appellant, and the chancellor properly

granted her a divorce and awarded her alimony. Were it otherwise, we are not authorized under the law to disturb the divorce, nor have we been asked to do so upon this appeal. We have considered it solely for the purpose of ascertaining the correctness of the award of alimony of which appellant complains.

It is virtually admitted that appellee has accumulated nothing since his marriage; he so swears and there is no attempt to contradict him. It is charged in the petition that he was worth $200,000.00 at the time the suit was filed, and was worth that amount at all of the times therein mentioned; the evidence, however, not only wholly fails to substantiate this but it is otherwise vague, indefinite and uncertain as to appellee's true financial worth. Appellee's sole occupation was that of a retail merchant or storekeeper, and yet there is not a word of evidence in the record as to the amount of income he derived from his business or even as to the gross or net amount of his yearly sales. The only evidence on the subject is appellant's statement that she thought the stock in the store was worth over $10,000.00 and appellee's statement that it last inventoried at a little over $5,000.00 and was not all paid for. Appellant also testified, and she alone testifies on the subject, that appellee owned valuable coal and timber lands, but she is silent as to their location, quantity, cost price and value. Appellant testifies, without contradiction, that the timber land had all been cut over, was valueless and a liability rather than an asset, and that the only interest he had in any coal lands consisted of some joint leaseholds. he and his sister owned on some supposed coal land which tests had proved worthless and without coal and upon which he would probably lose $10,000.00.

Substantially all, if not all of the property belonging to appellee and referred to in the evidence, is located in Harlan county. The parties differ widely as to the value thereof and offer little or no corroborative evidence to their respective estimates. It is shown, however, by the testimony of one witness that appellee's total assessed wealth amounted to $46,315.00, and as appellee's statement that he owned no stocks, bonds or other personal property of any material value stands uncontradicted, we may assume that this figure approximately represents his net worth. The accuracy of this estimate is further supported by the fact that the chancellor, who was no doubt familiar with the value of prop-

erty generally in and around Harlan county and probably with the value of the particular properties mentioned in the evidence as belonging to appellee, seems to have accepted this assessed value as a true and correct estimate of appellee's holdings. Taking that amount as a basis and in the light of all the facts, we have concluded that appellant is entitled to and should be awarded alimony in a lump sum in the amount of $9,000.00. This sum is not meant to and does not include maintenance for her infant son, and upon the return of this case the court will, in addition to the $9,000.00 lump sum alimony allowed appellant, award her such maintenance for her infant son as may be right and proper under the prevailing conditions and circumstances.

Appellant's counsel were allowed a fee of $1,500.00 and of this appellee complains, and we think justly. The record before us is not voluminous and counsel's services could not have been laborious. Some forty-five depositions were taken, and all were brief except that of plaintiff herself, the entire record consisting of but 416 pages. The pleadings were simple and the issues were of facts neither technical nor complicated. All of the proof was taken in or near the office of counsel and required but little time and preparation. Upon the whole we are convinced the allowance of $1,500.00 is excessive and that a fee of $900.00 would amply compensate counsel for their services, and upon the return of this case that sum will be allowed them.

For the reasons indicated, the judgment is reversed both upon the original and upon the cross appeal for proceedings consistent herewith.

Judgment reversed.